## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| AUDREY MACHNIK, as successor in interest to MICHAEL MACHNIK, <br><br> Plaintiff, <br><br> vs. <br><br> WAKEFIELD & ASSOCIATES INC., <br><br> Defendant. | Case No.: 18-cv-678 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Audrey Machnik is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff was the spouse of Michael Machnik (deceased). Plaintiff is the successor in interest to Michael Machnik's claims.

5. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her, or her spouse, a debt allegedly incurred for personal, family or household purposes.

6. Defendant Wakefield & Associates, Inc. ("Wakefield") is a debt collection agency with its principal offices located at 10800 East Bethany Drive #450, Aurora, Colorado 80014.

7. Wakefield is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Wakefield is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Wakefield is a "debt collector" as defined in 15 U.S.C. § 1692a.

## FACTS

10. Plaintiff's husband, Michael Machnik, obtained medical services from Bell Ambulance, Inc. ("Bell Ambulance") on or about January 12, 2017, January 19, 2017, February 9, 2017, February 13, 2017, and February 28, 2017.

11. Any debts incurred as a result of these medical services were incurred for personal, family, or household reasons, specifically including medical care provided by emergency medical technicians and transportation of Michael Machnik to the hospital.

12. Michael Machnik was not required to pay for the medical services at the time services were rendered. Instead, the creditor, or a billing agent, mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'"); *see also, e.g., Kelly v. Montgomery Lynch & Assocs.*, 2008 U.S. Dist. LEXIS 30917, at * 9-10 (N.D. Ohio Apr. 15, 2008) ("The debt at issue in this case involves financial expenses incurred . . . in exchange for medical services . . . . Pursuant to this debt, the Plaintiff was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA.").

13. On August 19, 2017, Michael Machnik passed away.

14. Since Michael Machnik's death, Plaintiff has acted as the representative of Michael Machnik's estate and has received all of his mail.

15. On or about March 28, 2018, Wakefield mailed a debt collection letter to "Michael Machnik" regarding several alleged debts. A copy of this letter is attached to this complaint as Exhibit A.

16. Upon information and belief, the alleged debts that Wakefield was attempting to collect with Exhibit A were debts incurred as a result of the medical services Bell Ambulance provided to Michael Machnik.

17. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Michael Machnik inserted by computer.

18. Upon information and belief, Exhibit A is a form debt collection letter used by Wakefield to attempt to collect alleged debts.

19. Plaintiff actually received this letter, and believed that she may be legally obligated to satisfy the debts referenced in Exhibit A.

20. Upon information and belief, Exhibit A is the first written communication Wakefield mailed to Plaintiff or her deceased husband regarding the alleged debts referenced in Exhibit A.

21. Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail to the alleged debtor along with, or within five days of, the initial communication:

> Unless you, the consumer, notify this collection agency within thirty days after receipt of this notice that you dispute the validity of the debt or any portion thereof, the debt will be assumed to be valid by this collection agency. If you, the consumer, notify this collection agency in writing within thirty days after receipt of this notice, that the debt or any portion thereof is disputed, this collection agency will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by this collection agency. Upon your written request within thirty days after receipt of this notice this collection agency will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

22. Exhibit A is misleading and confusing to the unsophisticated consumer because it does not identify the name of the creditor to whom the debt is owed.

23. Exhibit A states:

> Our client(s) referred your past due account(s) to this Agency for collection. If there is some reason why you are unable to make full payment on this outstanding balance we ask that you contact our office.
>
> To insure proper credit to your account(s) please use payment coupon below and make your check payable to Wakefield & Associates, Inc.

Exhibit A.

24. Exhibit A includes a tabular summary of the accounts:

| Name of Original Creditor | Original Creditor Account Number | Principal Balance | Accrued Interest | Interest Rate | Sub Total | Service Date |
|---|---|---|---|---|---|---|
| BELL AMBULANCE INC | 17-▮057 | $194.75 | $5.62 | 5.00% | $200.37 | 01/12/2017 |
| BELL AMBULANCE INC | 17-▮129 | $194.75 | $5.62 | 5.00% | $200.37 | 01/12/2017 |
| BELL AMBULANCE INC | 17-▮036 | $194.75 | $5.62 | 5.00% | $200.37 | 01/19/2017 |
| BELL AMBULANCE INC | 17-▮173 | $194.75 | $5.62 | 5.00% | $200.37 | 01/19/2017 |
| BELL AMBULANCE INC | 17-▮029 | $194.75 | $5.62 | 5.00% | $200.37 | 02/09/2017 |
| BELL AMBULANCE INC | 17-▮143 | $194.75 | $5.62 | 5.00% | $200.37 | 02/09/2017 |
| BELL AMBULANCE INC | 17-▮024 | $225.00 | $6.50 | 5.00% | $231.50 | 02/13/2017 |
| BELL AMBULANCE INC | 17-▮190 | $35.72 | $1.03 | 5.00% | $36.75 | 02/28/2017 |
|  |  |  | Total Due |  | $1,470.47 |  |

Exhibit A.

25. Exhibit A states that Wakefield's "clients" referred the debts to Wakefield.

26. Exhibit A states that "BELL AMBULANCE INC" is the name of the "Original Creditor" and provides the "Original Creditor Account Number" for each debt.

27. On its face, Exhibit A does not state the name of the "current creditor." *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016) ("The letters provided no additional details about the relationship between Asset Acceptance and Fulton. Nowhere did they say who *currently* owned the debt.") (emphasis added).

28. Exhibit A states that Wakefield's "client" referred the debts to Wakefield for collection but does not identify who Wakefield's "client" is.

29. Exhibit A states that Bell Ambulance is the "Original Creditor" but does not explain whether the debt has been assigned.

4

30. A debt collector does not disclose the identity of the creditor by naming an entity without explicitly or implicitly making clear in the letter that the entity is the current creditor to whom the debt is owed. The unsophisticated consumer is aware that most debts are freely assignable and are regularly sold to third party debt buyers.

31. The debt collector may disclose the identity of the creditor to whom the debt is owed by expressly identifying that entity as the "creditor," the "current creditor," or other non-confusing language, but must do so explicitly to ensure the letter is not ambiguous on the question of the current owner of the debt. *Janetos*, 825 F.3d at 322.

32. Where a debt collector identifies an entity as the "original creditor" without otherwise making it clear that the debt collector is collecting the debt on behalf of that same entity, it implies that the current creditor is someone other than the original creditor. *E.g., Bentkowsky v. Benchmark Recovery Inc.*, 2015 U.S. Dist. LEXIS 12694, at *1-2 (N.D. Calif. Feb. 2, 2015) ("Although the letter identified the correct creditor, it did not identify it as the current creditor. It instead labeled the creditor as the 'Original Creditor.' The letter therefore was confusing and left the reader unaware of the current creditor, in violation of the FDCPA.")

33. The apparent contradiction between the plain meanings of the terms "creditor" and "original creditor" implies to the unsophisticated consumer that the "original creditor" is not the current creditor. *Bentkowsky*, 2015 U.S. Dist. LEXIS 12694, at *1-2; *see* 15 U.S.C. § 1692g(a)(5) (the consumer may request "the name and address of the *original creditor*, if different from the *current creditor*"); *see also Francisco v. Doctors & Merchants Credit Serv.*, 1998 U.S. Dist. LEXIS 12234, at *20 (N.D. Ill. July 29, 1998) ("*Apparent* contradictions of validation notices are analogous to literally false statements in trademark law, in the limited

sense that they are thought to cause confusion by their very nature; in other words, apparent contradictions are thought to evidence per se confusingness, to borrow Judge Posner's phrase.").

34. A debt collection letter that implies that a debt has been assigned must make it clear that the original creditor is the current creditor. *Janetos*, 825 F.3d at 322 ("Defendants do not explain how, in light of this language, an understanding of Asset Acceptance's former role would have shown its current role."); *Gritters v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 63010, at *21-22 (N.D. Ill. Apr. 13, 2018 ("whether Gritters . . . could have figured it out despite what Pierce had written, is all beyond the point. 'A lucky guess would have nothing to do with any disclosure the letters provided. Compliance with the clear requirements of § 1692g(a)(2) demands more.' By failing to clearly disclose the name of 'the creditor to whom the debt is owed,' Pierce's validation notice violated the Act, without any need for extrinsic evidence of confusion.") (citing and quoting *Janetos*).

35. Exhibit A exacerbates the confusion by stating that the account has been referred to Wakefield by its "client(s)," rather than the "original creditor," "the client(s) referenced in the table below," or simply referring to Bell Ambulance by name.

36. Exhibit A does not identify Wakefield's "client(s)," nor does Wakefield state that the "client(s)" are referenced in the tabular summary of the debts below.

37. Exhibit A further exacerbates the confusion by identifying the "Original Creditor Account Number" for each debt but providing a different "Account #" for the debts in the payment remittance slip:



Exhibit A.

38. Exhibit A further exacerbates the confusion by applying a 5% interest rate.

39. In fact, the "Original Creditor," Bell Ambulance mailed invoices that referred to a "1% per month late payment penalty" rather than 5% simple interest. A copy of one of these invoices is attached to this complaint as Exhibit B. The unsophisticated consumer would be more confused and more likely to believe that Bell Ambulance was not the current creditor due to the inconsistency.

40. Plaintiff was confused by Exhibit A.

41. The unsophisticated consumer would be confused by Exhibit A.

42. Plaintiff had to spend time and money investigating Exhibit A.

43. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA*

44. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character,

amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially

when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

45. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

46. The FDCPA requires debt collectors to provide certain information and notices to consumers within five days of the initial contact with the consumer:

> (a) **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (2) the name of the creditor to whom the debt is owed;

9

15 U.S.C. § 1692g(a)(2).

47. To satisfy § 1692g(a)(2), the debt collector must state the name of the creditor in a non-confusing manner:

> The recipients of these letters would therefore find themselves obliged to guess who currently owned the debts in question. Since the name was on the letters, some might correctly guess that Asset Acceptance was the current creditor, but a lucky guess would have nothing to do with any disclosure the letters provided. Compliance with the clear requirements of § 1692g(a)(2) demands more.

*Janetos*, 825 F.3d at 323.

48. Failure to provide the required disclosures within five days of the initial communication with Plaintiff and the class is a *per se* violation of the FDCPA. *Janetos*, 825 F.3d at 324 ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a)."); *see also, e.g., Walls*, 2012 U.S. Dist. LEXIS 68079, at *5 ("We reject defendants' contention in their reply brief that what plaintiff is complaining of is 'immaterial' information. The statute expressly requires identification of the creditor to whom the debt is owed . . . .").

49. For purposes of Plaintiff's claim under 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10), Defendants' omission is a material violation of the FDCPA.

50. Misrepresentation of the creditor's identity is a misrepresentation of the character and legal status of the debt. 15 U.S.C. § 1692e(2)(A). *Janetos*, 825 F.3d at 324 ("Knowing the current creditor 'potentially affects the debtor in the most basic ways, such as what the debtor should write after 'pay to the order of' on the payment check to ensure that the debt is satisfied.") (quoting *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 488 (E.D.N.Y. Mar. 1, 2013).

51. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

52. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

53. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

## COUNT I – FDCPA

54. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

55. <u>Exhibit A</u> states that Wakefield's "client(s)" referred the debts to Wakefield.

56. <u>Exhibit A</u> states that the "Original Creditor" is Bell Ambulance.

57. <u>Exhibit A</u> does not state the name of the current creditor.

58. <u>Exhibit A</u> represents to the consumer that Bell Ambulance has assigned the debts in question to some undisclosed third party, or potentially to Wakefield itself.

59. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692g(a), and 1692g(a)(2).

## CLASS ALLEGATIONS

60. Plaintiff brings this action on behalf of two Classes.

61. Class I ("All Creditors Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) where the debt was incurred for personal, family or household

purposes, (d) and the letter in the form of Exhibit A was mailed between May 1, 2017 and May 1, 2018, inclusive, (e) and was not returned by the postal service.

62. Class II ("Bell Ambulance Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) stating that Bell Ambulance is the "Original Creditor" of the debt, (d) where the debt was incurred for personal, family or household purposes, (e) and the letter in the form of Exhibit A was mailed between May 1, 2017 and May 1, 2018, inclusive, (f) and was not returned by the postal service.

63. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

64. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

65. Plaintiff's claims are typical of the claims of the members of each Class. All are based on the same factual and legal theories.

66. Plaintiff will fairly and adequately represent the interests of the members of each Class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

67. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

68. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Classes and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 1, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com